GRIFFIN, Judge.
This is the appeal of a summary final judgment rendered in favor of the appel-lees. As stated in appellees’ motion for summary judgment and on appeal, the sole issue in dispute between the parties was a single question of law: the operation and effect of section 253.82, Florida Statutes (1985).
In 1946, the State of Florida conveyed to appellees’ predecessor in title certain real property the state had acquired pursuant to the Murphy Act.[1] The 1946 deed reserved a 200 foot wide easement for state road right-of-way. Appellees purchased the property in 1984 and contended that by virtue of later legislation, section 253.-82(l)(a), Florida Statutes (1985),[2] the state *1301 was divested of its easement. The dispute between appellees and Volusia County arose because the county recognized the state’s easement and refused to issue ap-pellees a building permit utilizing setbacks that encroached upon the easement. We disagree that the release provisions of the statute extinguished the state’s previously reserved easement.
In 1980, the legislature enacted Chapter 80-228, Laws of Florida,[3] pursuant to which the trustees of the Internal Improvement Trust Fund were directed to quitclaim previously unconveyed Murphy Act lands to their pre-1939 record owners or assigns, upon application and a showing that the land had been assessed to the applicant and the taxes paid for the preceding 20 years. Enactment of section 253.82 in 1984 provided a more streamlined procedure for vesting title by automatically releasing the state’s interest in such lands. Subsection (4) of the 1980 legislation and subsection (5) of section 253.82, were substantially identical:
(5) Nothing herein shall affect the validity of previous conveyances of Murphy Act lands by the board of trustees or previous reservations or restrictions therein.[4]
Section 253.82 clearly expresses an intent on the part of the legislature to protect prior conveyances of Murphy Act lands and previous reservations or restrictions by the state in those conveyances. Although the language used in section 253.82(l)(a) is not very precise, it appears that the intent was to provide for a method of disposition of property still owned by the state at the time the statute was enacted without affecting reservations or restrictions on Murphy Act lands previously conveyed. See also Jacobs & Fields, Murphy’s Law: A Revenue Crisis Spawns Title Uncertainty, 16 Stetson L.Rev. 227, 258-259 (1987).[5]
REVERSED.
HARRIS and PETERSON, JJ., concur.

. Chapter 18296, Laws of Florida (1937) vested fee simple title in the state to lands on which tax certificates had been outstanding for more than two years prior to June 9, 1937, its effective date.

. Section 253.82 provides:
(l)(a) The interest of the state in any land which was acquired by the state under chapter 18296, Laws of Florida, 1937, but which is listed on a county tax assessment roll as being owned by a person other than the state and on which ad valorem taxes have been paid at least since January 1, 1964, or on which ad *1301 valorem taxes have been paid for at least 20 years preceding the year in which title is being claimed by such person or his predecessors in title is hereby released to such person. The rights that are released under this subsection are all rights in the land, including state-held subsurface rights.

. Codified as § 197.387, FIa.Stat. (1981).

. The quoted language is from the current statute. The 1980 statute, as codified in section 197.387(4), Florida Statutes (1981) provided:
(4) Nothing herein shall affect the validity of previous conveyances of Murphy Act lands by the Board of Trustees or previous reservations of certain title interests therein.

. In this article, the authors commented:
The statutory language of the 1984 act purports to release "all rights in the land, including state held subsurface rights." This can certainly be argued to release not just subsurface rights never previously addressed but also all of the oil, gas and mineral rights which had been expressly and systematically reserved when Murphy lands were sold. It can also be argued to release any road right-of-ways, whether used or not, acquired pursuant to the Murphy Act. While the authors suspect that both of these results are far beyond the expectations of the legislature, they further evidence the problems inherent in non-record property vestings and ill-conceived legislation.